Mr. Bischoff. May it please the Court, John Bischoff on behalf of the plaintiff appellant Ronald Sweatt. Mr. Sweatt began his employment with the Union Pacific Railroad back in 2006. He was a trackman and a machinist and he developed bilateral carpal tunnel syndrome. He sought medical care. His doctor had said that it might be company related, that we'll do some conservative treatment and eventually might need surgery. The issue here is that, based on the lower court's finding that the statute of limitations, the 180 day statute had expired before he filed his FRSA case, we disagree with that because when he sought medical treatment, the railroad delayed, denied, or interfered with his medical treatment and that's a violation of the FRSA under 20109c. Now, to prevail in an FRSA case, the plaintiff must show that he was engaging in a protected activity and the protected activity was seeking medical care for a job related injury. The second element that the appellant must show the employee is that the railroad knew that he was engaging in protected activity. Now, that is the big issue in this case. All along, the railroad has said, your repetitive trauma, bilateral carpal tunnel syndrome is not related to any of the work. It's just not, you didn't get it here. You didn't get it from us. And they maintain that throughout the prior case that Mr. Sweatt had against the railroad under the FVLA. Now, under the FVLA, he has a duty to file his case within the three years if he knew or should have known that his injury was related to his work. In the FRSA, he has to show that the railroad knew that his medical care, medical treatment was due to an injury that he received at the workplace. Now, how does he show that the railroad knew that this was a job related injury when the railroad all along denies that it's related to the job? Now, in the FVLA case, the railroad took Dr. Coates' deposition. Took it in August 5th, 2013. At the deposition, Dr. Coates said, with a reasonable degree of medical and surgical certainty, the bilateral carpal tunnel syndrome is related to his activities at the workplace. So, then in October of 2013, Dr. Coates gave a written prescription for a specific surgery for the bilateral carpal tunnel syndrome and the railroad denied. Said, we're not going to process this surgery. We're not going to pay for it. And at that point in time, that is when, because of what Dr. testified in his deposition, we have proof, or we can show, that the railroad knew that Mr. Sweat was engaged in protected activity. That is, he was seeking treatment for a job related injury. And we submit that the 180 day time to file his FRSA action occurred at the very earliest, when the railroad took the deposition of Dr. Coates, where the doctor said it's related to his job activities. And then after that, the railroad still continued to maintain that we have nothing to do with it, it's not job related. But they didn't present anything contrary to what Dr. Coates said. So, at that point in time, the railroad knew that he was engaged in protected activity. And that's when the 180 day starts for the FRSA action. Now, Judge Lee focused on the fact that Mr. Sweat and Dr. Coates were aware of his medical condition and that perhaps it was related to his work activities. But that isn't part of the FRSA proof. We have to show that the railroad knew that he was engaged in protected activity and they didn't know and he didn't engage in protected activity until they knew that his work related injury needed surgery. And that's when they came forward, October 22nd, 2013, seeking medical care for the job related bilateral carpal tunnel syndrome and that's when they denied it and that's what triggered his FRSA action. The court doesn't have any other questions. You're well into your rebuttal time, you know. Pardon? You're into your rebuttal time. Oh, okay. Thank you. Thank you, Mr. Bischoff. Ms. Dawson. Good morning, Your Honors. May it please the Court. My name is Brody Dawson and I represent the defendant in Union Pacific Railroad. Important to what plaintiff's counsel just argued here is that he has conflated the test that applied to an interference with medical care versus the provision of the FRSA that applies to intimidating or retaliating against employees. When a railroad is charged with intimidating or retaliating against an employee, that's where you have to prove that the employee had engaged in protected activity. When dealing with the provision that's at issue in this case, denial or interference with medical care, there is no responsibility or notice requirement that the employee is engaging in protected activity. Indeed, that provision applies to medical care that relates to on-duty or off-duty injuries. So the argument about notice to the railroad regarding the work-relatedness of the condition does not apply to the provision at issue in this case. Additionally, while it was raised on opening argument, there is no question before the Court today about whether or not the determination not to pay for surgery was a violation of the FRSA. The only issue before the Court today is whether or not plaintiff's claim was timely. And based on the record facts that plaintiff admitted to at the district court level, there is no question that his claim was untimely. Mr. Sweat admitted during his deposition that in 2012, January of 2012, Dr. Coates recommended surgery for his bilateral carpal tunnel syndrome. He also admitted that in 2012, the request was made to Union Pacific to pay for that surgery and that at that time, that request was declined. He also testified that he was seeking damages in his FRSA lawsuit from 2012 onward related to lost wages and other non-economic damages that related to the failure of having his carpal tunnel syndrome at that time. He also admitted at the district court level that Union Pacific's position has not changed since 2012 regarding its decision to decline payment for the surgery. The argument put forward here by plaintiff would essentially make the statute of limitations a nullity because it would allow anyone to continually restart the clock by requesting the same relief that had previously been denied. In this case, Mr. Sweat's doctor stated that he could have the surgery in 2012. He made that request and that request was denied. That position has never changed and therefore in 2012, he was on notice of the alleged violation and it was incumbent on him within 180 days from that first denial to file his charge with OSHA and he failed to do so until 2014. For those reasons, unless the judges have any questions, the district court correctly ruled that the statutes of limitations barred his claim and we ask that that decision be affirmed. Thank you. Thank you. Thank you, Ms. Dawson. Anything further, Mr. Bischoff? Yes, Your Honor. I point out to the Port Authority Trans-Hudson Corporation versus the Secretary of Labor where it says, we conclude that Congress intended that the entirety of subsection 2001, I mean, 20109C to apply only when an employee sustains an injury during the course of employment. So how can the statute of limitations 180 days start until the defendant knows that it is violating the FRSA and knows that this is a job-related injury? They maintain all the time that it wasn't. And as I mentioned before, repetitive trauma cases are hard to prove when they occurred, how they occurred. And we think that it doesn't make it a nullity on the statute of limitations because there is, when there is a certain event, and certainly we disagree with counsel in saying that the defendant knowing that the plaintiff is engaging in protected activity applies to 20109C. That's when the statute starts running is when we can show or we can show that the defendant is aware of the fact that this is a job-related injury. Thank you. Thank you very much, counsel. The case is taken under advisement.